UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 14-57104 |
| | ) | |
| JOHN JOSEPH LEWIS JOHNSON, III | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge John E. Hoffman, Jr. |
| | ) | |
| EOT ADVISORS, LLC, | ) | |
| 777 Main St., Suite 700 | ) | |
| Ft. Worth, TX 76102 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Pro. No. |
| | ) | |
| JOHN JOSEPH LEWIS JOHNSON, III | ) | |
| 4110 Hanover Square Dr., Gramercy Place | ) | |
| Dublin, Ohio 43016-7086 | ) | |
| | ) | **COMPLAINT TO EXCEPT** |
| Defendant. | ) | **DEBT FROM DISCHARGE** |
| | ) | |

Plaintiff, EOT Advisors, LLC ("EOT"), for its Complaint against the Debtor, John Joseph Lewis Johnson, III (the "Defendant"), states as follows:

### INTRODUCTION

1.   Plaintiff is, and at all times relevant hereto, a limited liability company organized under the laws of the State of Texas with a principal place of business at the address listed for it in the caption of this adversary proceeding.

1

2.  Defendant resides in Dublin, Ohio. On October 7, 2014 (the "Petition Date"), the Defendant filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.  The Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. §157 (I) and (J).

4.  Venue of this adversary proceeding is appropriate in this Court under 28 U.S.C. § 1409(a) in that this adversary proceeding arises in a case under Title 11 currently pending before this Court.

### FACTUAL BACKGROUND

5.  Prior to September 2013, the Defendant, a hockey player with the Columbus Blue Jackets (the "Team"), through his agent, Maurice Taylor ("Taylor"), approached EOT about a loan by EOT to Defendant and securing the repayment of the loan with a lien on Defendant's National Hockey League Player Contract dated January 8, 2011 (the "NHL Contract"). Taylor, acting as Defendant's agent, facilitated the actions described below.

6.  On September 10, 2013, the Defendant signed a Term Sheet (the "Term Sheet") under which Defendant agreed to grant EOT a first lien on his NHL Contract and any and all payments and proceeds received thereunder as an inducement to EOT's making of a loan to the Defendant. A copy of the Term Sheet is attached hereto as Exhibit A.

7.  In the Term Sheet, the Defendant represented to EOT that he had no debts, loans or liens which would be of greater priority to EOT's lien on the NHL Contract. In making this representation, the Defendant represented to EOT that EOT would have a first priority lien on his NHL Contract.

2

8.     In the Term Sheet, the Defendant also represented to EOT that EOT would be able to collect principal and interest from the Columbus Blue Jackets (the "Team") so that EOT would receive payments due on its loan directly from the Team. Defendant further represented that he would deliver the Deposit Authorization to the Team within five (5) days of receiving the proceeds of the EOT loan. A copy of the Direct Deposit Authorization is attached hereto as Exhibit B.

9.     In the course of doing its due diligence on the credit worthiness of the Defendant, EOT discovered a judgment against the Defendant in the amount of $3,023,128.39, known as Case No. YS023832 on the docket of the Los Angeles County Court (the "Judgment") in favor of Pro Player Funding, LLC ("Pro Player"). When questioned about this judgment, EOT was told by the Defendant's agent, Taylor, that the Judgment had been paid in full and that the liens filed pursuant to the Judgment had been released. On September 11, 2013, at the direction of the Defendant, Taylor obtained an attached Satisfaction of Judgment from Pro Player's attorney and delivered it to EOT, and further represented to EOT that the Judgment had been paid in full. A true and accurate copy of the Satisfaction of Judgment that was delivered to EOT is attached hereto as Exhibit C.

10.   On September 12, 2013, Defendant executed and delivered a promissory note to EOT in the original principal amount of Four Hundred Thousand Dollars ($400,000) with interest accruing at eighteen percent (18%), per annum (the "Note"), payable to EOT pursuant to a payment schedule which is attached to the Note as "Schedule A." A true and accurate copy of the Note is attached hereto as Exhibit D. The signature on the Note matches Defendant's signature on the Term Sheet and on the Defendant's driver's license (which Taylor provided to EOT prior to the date the Note was signed), and Defendant signed the Note in the presence of a notary public in Franklin County, Ohio. In the Note, Defendant also agreed to deliver the Deposit Authorization to the Team within five (5) days of receiving the proceeds of the EOT loan.

11. To secure repayment of the Note, on September 12, 2013, Defendant also executed and delivered to EOT a Collateral Assignment and Pledge Agreement (the "Assignment") under which he pledged and assigned to EOT any and all payments and proceeds received under his NHL Contract. As was stated in the Term Sheet, the Assignment clearly provides that EOT was to have a first priority lien in the NHL Contract and any and all payments and proceeds received under the NHL Contract. The signature on the Assignment matches Defendant's signature on the Term Sheet, his driver's license and the Note. A copy of the Assignment is attached hereto as Exhibit E.

12. After signing the Note and Assignment, Defendant mailed to EOT the complete original set of loan documents, including the Note and the Assignment, and the Deposit Authorization. United Parcel Service tracking information demonstrates that the Defendant himself sent EOT all of the loan documents from UPS Store #5745 in Columbus, Ohio on September 12, 2013. A copy of the tracking information is attached hereto as Exhibit F.

13. Defendant also provided EOT with an executed Letter of Direction dated September 12, 2013 and signed by the Defendant, instructing EOT to wire all of the proceeds of the loan (the "Loan"), minus $70,000 (for his agent, Taylor) and other expenses to a bank account at JP Morgan Chase Bank (the "Chase Account." A copy of the Letter of Direction is attached hereto as Exhibit G. The Chase Account is solely in the name of the Defendant.

14. EOT relied upon the representations made by the Defendant in the Term Sheet, the Note, the Assignment and the Letter of Direction. EOT also relied on representations provided in the Satisfaction of Judgment that the Judgment in favor of Pro Player had been paid in full and satisfied. Defendant made these representations as an inducement for EOT to make the Loan, and EOT would not have made the Loan absent such representations.

15. The representations that Defendant made to EOT under the Term Sheet, the Note and the Assignment and the Satisfaction of Judgment were false in the following ways:

   a. Defendant knew that he had pledged and assigned the proceeds and payments under his NHL Contract to Pro Player prior to EOT's Loan and that Pro Player had perfected its assignment by filing a UCC-1 financing statement in the State of California;

   b. Defendant knew that the NHL Contract and the proceeds received thereunder were not free from all rights and claims of any other person or entity (as represented in the Assignment);

   c. Defendant never intended to execute and deliver to the Team the Deposit Authorization that he represented he would file under the Term Sheet, the Note and the Assignment; and

   d. Defendant knew that the Judgment had not been paid in full.

16. The false representations made by Defendant in the Term Sheet, the Note and Assignment and the delivery of the Satisfaction of Judgment were material representations that EOT relied upon as consideration for making the Loan.

17. EOT actually and justifiably relied upon the false representations made by the Defendant in making the Loan.

18. After the Loan was made and EOT wired the proceeds of the Loan to the Defendant's Chase Account, EOT discovered that Defendant had made materially false representations in the Term Sheet, the Note, and the Assignment and by delivering the Satisfaction of Judgment in order to induce EOT to make the Loan. After the loan was made, EOT again asked Defendant whether the status of the Pro Player Judgment had been paid and satisfied. Defendant falsely reaffirmed that the Pro Player judgment had been satisfied and paid in full.

19. Defendant's representations as to the status of Pro Player's lien in his NHL Contract also were false, as evidenced by Pro Player's continued pursuit of Defendant to collect amounts due from the Defendant in this Bankruptcy Case.

20. Despite his numerous representations to EOT that he had delivered the Deposit Authorization to the Team, Defendant never did so, and never had the intention of doing so, completely contrary to his representations in the Term Sheet, the Note and the Assignment.

21. Defendant defaulted on the Note by failing to deliver the Deposit Authorization to the Team within five (5) days of receiving the proceeds of the Loan and for failing to make any payments to EOT after November 12, 2013.

22. On December 23, 2013, EOT, through its counsel, sent correspondence to the Defendant notifying the Defendant that he was in default of the Note, and accelerating all amounts due to it under the Note, including its reasonable attorneys' fees and costs incurred in collecting the amounts due.

23. EOT has been injured through the Defendant's willful and malicious conduct in the amount of $632,672.30, the amount of its Proof of Claim filed in this bankruptcy case.

## FIRST CAUSE OF ACTION
## FRAUD
## §523(a)(2)(A)

25. Plaintiff restates and re-avers each and every allegation contained in paragraphs 1 through 23 above as if fully rewritten herein.

26. In the Term Sheet, the Note and the Assignment (and again after those documents were signed), Defendant made numerous false representations to EOT with the intent to deceive EOT so that EOT would make the Loan.

27. Defendant knew these representations were false or made such representations with gross recklessness as to their truth.

28. Defendant knew that EOT would rely on these representations.

29. EOT relied on Defendant's representations to its detriment and such reliance was justifiable. Defendant defrauded EOT.

30. EOT has been damaged by Defendant's fraudulent conduct in an amount in excess of $632,672.30, entitling EOT to an award of compensatory damages, including punitive damages, and attorneys' fees. Further, such debt should be excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
## FRAUD BY USE OF A STATEMENT IN WRITING
## §523(a)(2)(B).

31. EOT re-alleges and re-avers each and every allegation contained in paragraphs 1 through 30, as if fully rewritten herein.

32. Defendant used statements in writing, i.e. the Term Sheet, the Note and the Assignment representing the Defendant's financial condition.

33. EOT reasonably relied upon the Defendant's written statements and made the Loan to the Defendant.

34. Defendant executed and delivered the Term Sheet, the Note and the Assignment to EOT with the specific intent to deceive EOT into making the Loan.

35. EOT has been damaged by Defendant's fraudulent conduct in an amount in excess of $632,672.30, entitling EOT to an award of compensatory damages, including punitive damages, and attorney fees. Further, such debt should be excepted from discharge under § 523(a)(2)(B) of the Bankruptcy Code.

## THIRD CAUSE OF ACTION
## WILLFUL AND MALICIOUS INJURY
## §523(a)(6)

36. EOT restates and re-avers each and every allegation contained in paragraphs 1 through 35 above as if fully rewritten herein.

37. The Defendant knew that his representations in the Term Sheet, the Note and the Assignment were made with the willful and malicious intent to acquire money.

38. The Defendant's actions in submitting false information and documents in furtherance of his fraud were taken with the intent of willfully and maliciously injuring EOT.

39. Defendant willfully and intentionally acted to harm EOT.

40. The Defendant's intentional and willful actions resulted in a willful and malicious injury within the meaning of § 523(a)(6) of the Bankruptcy Code and the Defendant's debt to EOT should be excepted from discharge.

WHEREFORE, EOT is entitled to judgment against the Defendant declaring that it possesses a claim against the Defendant in excess of $632,672.30, entitling EOT to an award of compensatory damages, including punitive damages, and attorney's fees and that the Defendant's debt to EOT is non-dischargeable under §523(a)(2)(A), §523(a)(2)(B) and/or §523(a)(6) of the Bankruptcy Code.

Respectfully submitted,

/s/ M. Colette Gibbons
M. Colette Gibbons (0003095)
Colette.Gibbons@icemiller.com
Robert M. Stefancin (0047184)
Robert.Stefancin@icemiller.com
Fifth Third Center
600 Superior Avenue, East, Suite 1701
Cleveland, OH 44114
Phone: (216) 394-5063/Fax: (216) 621-6502

CL\240295.3